UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

HOMESITE INSURANCE COMPANY,
a/s/o Margaret Lofrumento, and
MARGARET LOFRUMENTO, individually,

Plaintiffs,

v.

TRIANGLE TUBE/PHASE III CO. INC.,

Defendant.

Civil Action No.
3: 16 - CV - 650  (CSH)

NOVEMBER 23, 2016

**RULING ON DEFENDANT'S MOTION FOR LEAVE TO JOIN THIRD PARTY
DEFENDANT, HOFFMAN FUEL COMPANY OF DANBURY [DOC. 13]**

**I. BACKGROUND**

Plaintiffs Homesite Insurance Company and Margaret Lofrumento (collectively "Plaintiffs") commenced this product liability action against Triangle Tube/Phase III Co., Inc. ("Triangle Tube"), alleging that a water tank it manufactured failed, resulting in a "significant water loss" at Lofrumento's property in Brookfield, Connecticut, on November 19, 2014.[1]  Doc. 1 ("Complaint"), ¶ 8.  In particular, Lofrumento and Homesite, the insurer of Lofrumento's Brookfield property, allege that "the failure of the 35 gallon Triangle Tube water tank" was due to corrosion that occurred "less than three years" after the tank was in service – *i.e.*, "within the warranty and useful life period for this water heater." *Id.*, ¶¶ 8- 9.  Plaintiffs bring this claim under Connecticut's product liability statute, Conn. Gen. Stat. § 52-572m, *et seq.*, asserting that the "water tank was in a defective and

---

[1] The Brookfield property has been described as residential property located at 29 Deer Run Road, Brookfield, Connecticut.  Doc. 1, at 4 (¶ 6), Doc. 13, at 7 (¶ 1).  Lofrumento is domiciled at that address.  Doc. 15, ¶ 6.

1

unreasonably dangerous condition." *Id.*, ¶ 14(a). Plaintiffs further allege that the tank was designed and manufactured in a condition which subjected Lofrumento to "an unreasonable risk of harm;" and the tank was "not merchantable" or fit for its intended and foreseeable use. *Id.*, ¶¶ 14 (b)-(c).

With respect to damages, pursuant to the terms and conditions of the Homesite insurance contract issued to Lofrumento (Policy No. 31345716), Homesite paid Lofrumento in excess of $132,406.32 for the water damage to the Brookfield property. *Id.*, ¶¶ 7, 10. Homesite claims that "pursuant to the contract of insurance and by operation of law," it is "subrogated to the rights of Ms. Lofrumento against all parties responsible for the occurrence of said damages" due to failure of the water tank. *Id.*, ¶ 10. In addition to the payments made by Homesite, Lofrumento incurred $79,721.66 in damages and costs to repair her property. *Id.*, ¶ 11.

## II. DISCUSSION

### A. Pending Motion

Pending before the Court is Triangle Tube's motion, pursuant to Rule 14(a), Fed. R. Civ. P., requesting leave to join Hoffman Fuel Company of Danbury ("Hoffman") as a third party defendant on the ground that "Hoffman is or may be liable to Triangle Tube for all or part of the claim that the plaintiffs have asserted against Triangle Tube in this civil matter." Doc. 13, at 1. Defendant has attached its proposed third party complaint as Exhibit A to its motion. *Id.*, Ex. A.

In support of the motion, Triangle Tube argues that Hoffman will suffer no prejudice or surprise by being brought into the action at this time. In particular, Triangle Tube points out that "[t]he parties have not yet engaged in formal discovery, and no depositions have been taken to date." Doc. 13, at 1. Moreover, Hoffman is already aware of the existence of the action in that it has

"previously received notice from [Triangle Tube's] attorneys of the potential claim against it." *Id.*

Neither of the two Plaintiffs in this action has responded or objected to Triangle Tube's motion to implead Hoffman. The time to file such a response has expired, and the motion is ripe for decision.

**B.      Standard to Grant or Deny Motion for Leave to File Third Party Complaint**

Pursuant to Rule 14(a)(1) of the Federal Rules of Civil Procedure, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." By design, Rule 14(a) "promote[s] judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." *Hines v. Citibank, N.A.*, 96-CV-2565(RJW), 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999) (citing *Gross v. Hanover Ins. Co.*, 138 F.R.D. 53, 54 (S.D.N.Y.1991)). Nonetheless, "the right to implead third parties is not automatic," *Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y.1987). The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion. *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984) (*per curiam*); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 477 (D.C. Cir.1976), *cert. denied*, 434 U.S. 1086 (1978).

In general, "[a] third-party claim may be asserted under Rule 14(a)(1) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party." 6 Charles Alan Wright & Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1446, at 377 (3d ed. Westlaw April 2016). *See*, *e.g.*,

3

*Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000) ("To sustain an impleader action, the third-party . . . must be liable secondarily to the original defendant . . . for all or part of the plaintiff's recovery, or . . . the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant. This means that the impleader action must be dependent on, or derivative of, the main . . . claim.") (citations, internal quotation marks, and bracketed material omitted); *Siemens Westinghouse Power Corp. v. Dick Corp*, 299 F. Supp. 2d 242, 248 (S.D.N.Y. 2004) ("The crucial characteristic of a Rule 14 claim is that [the] defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. In other words, the outcome of the third-party claim must be *contingent* on the outcome of the main claim[.]") (emphasis in original; citations and internal quotation marks omitted).

Put simply, "[t]he secondary or derivative liability notion is central," such that impleader is often "successfully utilized when the basis of the third-party claim is indemnity." Federal Practice and Procedure § 1446, *supra; see also, e.g.*, *United States v. Farr & Co.*, 342 F.2d 383, 386-87 (2d Cir. 1965). In general, under Connecticut law, "[i]ndemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest." *Smith v. New Haven*, 258 Conn. 56, 67 n.7 (2001) (quoting *Crotta v. Home Depot, Inc.,* 249 Conn. 634, 641 (1999)). *See also Skuzinski v. Bouchard Fuels, Inc.,* 240 Conn. 694, 697-98 n. 3 (1997)*; Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 412 (1965).

In particular, to assert a Connecticut common law indemnification claim, a defendant must show that: "(1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the

situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent." *Smith v. New Haven*, 258 Conn. at 66 (citing *Kaplan*, 152 Conn. at 416). *See also Smith v. Greenwich,* 278 Conn. 428, 463 (2006) (quoting four *Kaplan* factors) *Kyrtatas v. Stop & Shop, Inc.*, 205 Conn. 694, 698 (1988) (setting forth "four separate elements" necessary to establish common law indemnification)*; O & G Indus., Inc. v. Aon Risk Servs. Ne., Inc.*, No. 3:12-CV-723 (JCH), 2013 WL 4737342, at *3 (D. Conn. Aug. 30, 2013) (same). Such "[i]ndemnity shifts the impact of liability from passive joint tortfeasors to active ones." *Skuzinski v. Bouchard Fuels, Inc.*, 240 Conn. 694, 697 (1997) (citations and internal quotation marks omitted).

### C.     Triangle Tube's Proposed Indemnification Claim against Hoffman

In the case at bar, defendant Triangle Tube seeks to implead Hoffman, arguing that it "is or may be liable to Triangle Tube for all or part of the claim that the plaintiffs have asserted against Triangle Tube in this civil matter." Doc. 13, at 1. Triangle Tube states the following alleged facts in its proposed Third Party Complaint. On August 27, 2012, Lofrumento "entered into an 'Equipment Sales Agreement' with Hoffman, regarding the sale and installation of the subject water heater." Doc. 13 (Ex. A, "Third Party Complaint"), at 8 (¶ 3). The following day, Hoffman "installed the subject water heater" at Lofrumento's residence (the Brookfield property), but did so improperly by failing to install a "drain pan" underneath it, "as required by the International Residential Code," as well as the "installation manual" for the heater. *Id.*, at 8 (¶¶ 4- 5). Moreover, Hoffman allegedly knew or should have known that a "drain pan" was required underneath the water heater. *Id.,* at 8 (¶ 6). Thus, according to Triangle Tube, it was Hoffman, and not Triangle Tube,

5

that negligently installed the water heater, which thereafter failed and resulted in water loss and damages to Lofrumento's Brookfield residence. *Id.,* at 8 (¶¶ 8-10). Moreover, Triangle Tube "did not enter into any contract with Hoffman for the installation of the subject water heater." *Id.*, at 9 (¶ 11).

Following its recitation of alleged facts, Triangle Tube sets forth one count of "Common Law Indemnification" against Hoffman in the "Third Party Complaint." In that claim, Triangle Tube alleges that Hoffman is the "party that was responsible for installing the subject water heater in Lofrumento's personal residence" and "had exclusive control over the sale and proper installation of the water heater." *Id.,* at 9 (¶ 13). Therefore, "if anyone was negligent" with respect to the installation of the water heater, "it was Hoffman for failing to properly and adequately execute its duties to properly install the subject water heater." *Id.*, at 9 (¶ 14). Such negligence allegedly included, *inter alia*, "failure to install a drain pan underneath the subject water heater," which was the "direct and proximate cause of the damages sustained to the real and personal property of Lofrumento, and thus the damages and losses suffered by Homesite." *Id.*, at 9 (¶ 15).

**D. <u>Subject Matter Jurisdiction</u>**

Before considering the substance of a third party claim, it is incumbent on the Court to determine whether there is adequate subject matter jurisdiction over that claim.[2] An impleader claim, as every other claim in federal court, must be assessed individually to confirm the existence of a proper basis for federal subject matter jurisdiction. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61,

---

[2] The Court notes that Triangle Tube failed to address subject matter jurisdiction in either its motion for leave to file a third party complaint or the proposed "Third Party Complaint" itself. Doc. 13, Ex. A.

66 n.1 (1996) ("Once federal subject matter jurisdiction is established over the underlying case between [plaintiff] and [defendant], the jurisdictional propriety of *each additional claim* is to be assessed individually.") (emphasis added).  "[W]hether a court has subject matter jurisdiction over a third-party . . .  is distinct from an assessment of the propriety and merits of an impleader action." *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000).

As this Court has previously held, subject matter jurisdiction in the main case at bar is based solely on "diversity of citizenship," 28 U.S.C. § 1332(a). Plaintiffs' only  claim in the main action arises under a Connecticut statute, namely Connecticut's product liability act, codified at Conn. Gen. Stat. § 52-572m, *et seq*.  There are thus no grounds to find that a "federal question" has been implicated, 28 U.S.C. § 1331.  Similarly, because the proposed impleader claim is a Connecticut common law action for indemnification, there is no "federal question" in that action either.  The Court therefore examines whether there is "diversity of citizenship," 28 U.S.C. § 1332(a)(1), between Triangle Tube and Hoffman, the parties to the proposed third party action.

Defendant Triangle Tube "is a corporation duly organized and existing under the laws of . . . New Jersey with a principal place of business [located] at 1 Triangle Lane, Blackwood[,] New Jersey."  Doc. 1, ¶ 3. Under 28 U.S.C. § 1332(c)(1), "a  corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  Triangle Tube is thus  a citizen of New Jersey. According to the third party complaint, "Hoffman is a foreign corporation duly authorized to transact business in the State of Connecticut, including the business of installing water heaters in residential homes." Doc. 13, at 8 (¶ 2).  Such allegations are inadequate for this Court to determine Hoffman's state(s) of citizenship for diversity purposes.   They establish neither Hoffman's state(s) of incorporation nor its principal place of

business. Therefore, were diversity the only basis upon which this Court could exercise subject matter jurisdiction, the Court would necessarily require Triangle Tube and/or Hoffman to present additional facts regarding citizenship.

However, in the absence of "federal question" or established "diversity" subject matter jurisdiction over a third party complaint, the Court next turns to examine whether supplemental jurisdiction exists under 28 U.S.C. § 1367.[3] That statute, captioned "Supplemental [J]urisdiction," provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under

---

[3] Supplemental jurisdiction was codified at 28 U.S.C. § 1367(a) in 1990. Prior to that date, federal courts recognized common law "ancillary jurisdiction" as the proper basis to exercise jurisdiction over third party indemnification claims. *See Associated Dry Goods Corp. v. Towers Financial Group*, 920 F.2d 1121 (2d Cir. 1990). As the Court of Appeals for the Second Circuit explained:

> [T]he Supreme Court noted in *Owen* [*Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978)] that "[a] third-party complaint depends at least in part upon the resolution of the primary lawsuit. Its relation to the original complaint is thus not mere factual similarity but logical dependence." . . . "Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. Those practical needs are the basis of ancillary jurisdiction."

*Associated Dry Goods Corp.*, 920 F.2d at 1126 (quoting *Kroger*, 437 U.S. at 377). *See also Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 436-37 (2d Cir. 2000) (with respect to third-party claims, "[i]t is well-settled that a third-party action for indemnification comes within a court's ancillary jurisdiction") (citing *Oneida County v. Oneida Indian Nation*, 470 U.S. 226, 251 (1985)); *Baylis v. Marriott Corp.*, 843 F.2d 658, 663 (2d Cir.1988) (ancillary jurisdiction refer[s] to the power of a federal court, once it acquires jurisdiction over a case and controversy properly before it, to adjudicate other claims sufficiently closely related to the main claim even though there is no independent basis for subject matter jurisdiction over the related claims. . . . It is mainly a tool for defendants and third parties whose interests would be injured if their jurisdictionally insufficient claims could not be heard in an ongoing action in federal court") (citations omitted).

Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* Therefore, if the claim in the proposed "Third Party Complaint" arises from the same nucleus of operative fact as Plaintiffs' Complaint, the Court may exercise supplemental jurisdiction.[4] *See, e.g., Coale v. Metro–North R.R. Co* ., No. 3:08–CV–01307 (CSH), 2009 WL 212063, at * 1-2 (D.Conn. Jan. 29, 2009) (recognizing supplemental jurisdiction with respect to interstate railroad carrier's third-party

---

[4] Section 1367(b) directs that district courts have no supplemental jurisdiction if original jurisdiction is based solely on diversity of citizenship and the claim is sought to be added by *plaintiffs* or *intervenors* who request to be plaintiffs.  Specifically, § 1367(b) provides:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C.A. § 1367(b).

As the Second Circuit has stated, § 1367(b) does not prevent the district courts from exercising supplemental jurisdiction over third-party claims.   The Second Circuit explained, as follows:

> Significantly, § 1367(b) reflects Congress' intent to prevent original plaintiffs – but not defendants or third parties – from circumventing the requirements of diversity. . . .  By contrast, "[b]ecause defendants are involuntarily brought into court, their [claims a]re not deemed as suspect as those of the plaintiff, who is master of his complaint." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir.1998); *see also Associated Dry Goods*, 920 F.2d 1121, 1126 (2d Cir. 1990) (noting that "ancillary jurisdiction should be more readily available to one haled into court against his or her will than to a plaintiff who has chosen the forum for litigation") . . . .

*Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726 -27 (2d Cir. 2000) (some internal citations omitted).

common law indemnity claim in relation to plaintiff railroad worker's personal injury action under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*).

The Second Circuit has articulated that "disputes are part of the 'same case or controversy' within § 1367 when they 'derive from a common nucleus of operative fact.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir.1991)). In exercising supplemental jurisdiction over third-party claims, district courts within this circuit thus assess whether the third-party claim and main claim (over which there is federal subject matter jurisdiction) derive from a common nucleus of operative fact. *See, e.g.*, *Mar-Cone Appliance Parts Co. v. Mangan*, 879 F. Supp. 2d 344, 357 (W.D.N.Y. 2012) ("Third-party claims by defendants for contribution against a third-party under Federal Rules of Civil Procedures 14(a) generally . . . fall within the court's supplemental jurisdiction if the impleaded defendant's actions share a 'common nucleus of operative fact' with the case already before the court.") (quoting *Grimes v. Mazda North Am. Operations*, 355 F.3d 566, 572 (6th Cir. 2014)); *Estate of Bruce v. City of Middletown*, 781 F. Supp. 1013, 1016-17 (S.D.N.Y. 1992) (exercising supplemental jurisdiction over town's third-party claims against movie theater for indemnification and contribution in civil rights and wrongful death action against town where town's claims against theater were "inextricably bound up with the factual issues associated" with plaintiff's death underlying his civil rights claim).

In determining whether two disputes arise from a common nucleus of operative fact, the Second Circuit has traditionally asked whether the facts underlying both claims substantially overlap or the main claim necessarily brings the facts underlying the second claim before the court. *Achtman*, 464 F.3d at 335. In the case at bar, the main product liability claim and the third-party

indemnification claim, based on negligence, arise from a common nucleus of operative fact. The subject water tank, allegedly manufactured by Triangle Tube and installed by Hoffman, failed on November 19, 2014, thereby damaging the Brookfield property. The manufacture, sale and installation of the tank, along with the reason for its failure, will be key facts to determine liability of Triangle Tube and/or Hoffman in this action. The facts of the two claims substantially overlap.

Moreover, the "third-party complaint depends at least in part upon the resolution of the primary lawsuit." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978). "Its relation to the original complaint is thus not mere factually similarity but logical dependence." *Id.* In other words, in the primary action, it must be determined whether the water tank leaked because it was "in a defective and unreasonably dangerous condition." Doc. 1, at 5 (¶ 14). If that is determined to be true, then the cause of the tank's defective, dangerous condition will be assessed, thereby resolving both the main and third party claims. For example, if the tank was, as alleged, in a condition that was not merchantable or fit for its intended purpose on November 19, 2014, the questions of design, manufacture, and installation must be examined, revealing whether Triangle Tube and/or Hoffman created the dangerous condition. As Rule 14(a), Fed. R. Civ. P. dictates, the third party claim must "aris[e] out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third party plaintiff," which in this case is the failure of the tank and the reason(s) for said failure. A finding on the factual issues in the main product liability action will lead, in whole or in part, to resolution of the third-party indemnification claim.

Having found that Triangle Tube's indemnification claim arises from a common nucleus of operative fact, the Court must determine whether there are factors which suggest that supplemental jurisdiction should be declined. Pursuant to 28 U.S.C. § 1367, the Court may decline to exercise

supplemental jurisdiction if the third party claim "raises a novel or complex issue of State law," the third party claim "substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," or the third party claim gives rise to "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367 (c)(1)-(4).

When determining whether to decline supplemental jurisdiction under § 1367(c), the Second Circuit has adopted the Ninth Circuit's approach in *Executive Software North America, Inc. v. United States District Court for the Central District of California*, 24 F.3d 1545, 1556-57 (9th Cir. 1994).[5] *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir. 1998). Under that approach, once a court identifies one of the factual predicates set forth in § 1367(c), the court may exercise some discretion to weigh and balance factors previously set forth in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), such as "judicial economy, convenience and fairness to litigants." *Itar-Tass Russian News Agency*, 140 F.3d at 446. In other words "the *Gibbs* factors are merged into the subsection 1367(c) analysis," but may be considered only after the court gives full effect to the codified categories enumerated in § 1367(c). 140 F.3d at 447. As the Eleventh Circuit summarized, while also adopting *Executive Software*:

> The breadth of discretion afforded federal courts in these cases has been codified by section 1367(c). . . . [W]hile supplemental jurisdiction must be exercised in the absence of any of the four factors of subsection 1367(c), when one or more of these factors is present, the additional *Gibbs* considerations may, by their presence or absence, influence the court in its decision concerning the exercise of such discretion.

*Palmer v. Hospital Auth.*, 22 F.3d 1559, 1569 (11th Cir. 1994). *See also Itar-Tass Russian News*

---

[5] Overruled on other grounds by *California Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

*Agency*, 140 F.3d at 1447 (same);   *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) ("We have indicated that, where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*, 383 U.S. at 726, 86 S. Ct. 1130: economy, convenience, fairness, and comity.") (citing *Itar-Tass Russian News Agency*, 140 F.3d at 445-47, for "rejecting approach of 1st, 3rd, 7th, and D.C. Circuits in favor of approach adhered to by 8th, 9th, and 11th Circuits"); *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 498 F. App'x 98, 102–03 (2d Cir. 2012) ("Once a court identifies one of the factual predicates which corresponds to one of the subsection 1367(c) categories, the exercise of discretion is informed by whether remanding the [supplemental] state claims comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness, and comity.") (quoting *Itar–Tass Russian News Agency*, 140 F.3d at 446).

In the case at bar, none of the § 1367(c) categories apply.  First, Triangle Tube's proposed indemnification claim does not raise a "novel or complex issue of State law," 28 U.S.C. § 1367(c)(1). Rather, as set forth below, Connecticut has delineated the standard elements for a common-law indemnification claim.

Second, because the product liability and indemnification claims derive from the same alleged injuries relating to the failure of the tank, the Court does not find that the indemnification claim will "substantially predominate" over the Plaintiffs' product liability claim, *id.*, § 1367(c)(2). The indemnification claim is related to and derivative of that main claim.

Third, the Court has not "dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3).  The main claim, regarding product liability, remains pending in the action.

13

Finally, no "exceptional circumstances" exist to compel refusal to hear the indemnification claim, *id.* § 1367(c)(4). To the contrary, all circumstances presented suggest that supplemental jurisdiction should proceed. The main action in the case at bar is in its preliminary stages. As Triangle Tube points out, "[t]he parties have not yet engaged in formal discovery, and no depositions have been taken to date." Doc. 13, at 1. Moreover, Hoffman is already aware of the existence of the action in that it has "previously received notice from [Triangle Tube's] attorneys of the potential claim against it." *Id.* Finally, Plaintiffs have made no objection to Triangle Tube's motion to implead Hoffman. Under these circumstances, there appear to be no "exceptional circumstances" militating against the exercise of supplemental jurisdiction.[6] In sum, none of the exceptions included within § 1367(c) prevent the Court from exercising supplemental jurisdiction over Triangle Tube's third-party claim.

### E.     Substance of Triangle Tube's Indemnification Claim

The Court next examines the substance of the proposed third party claim to determine whether it alleges a plausible claim. Under Rule 14(a), Fed. R. Civ. P., a third party claim may be asserted against "a nonparty who is or may be liable to it for all or part of the claim against it." As discussed above, the third party's liability must be dependent upon the outcome of the main claim or the third party must be "secondarily liable to the defending party." 6 Wright, Miller & Kane,

---

[6] Furthermore, were such exceptional circumstances to exist under § 1367(c)(4), judicial economy might nonetheless favor the exercise of supplemental jurisdiction because all relevant facts regarding the manufacture, sale, and installation of the tank could be discovered by the parties to determine the causes for the tank failure at the Brookfield property. It would thus seem fair, reasonable, and "ordinarily to be expected" that both the impleader and main claims would be tried in one judicial proceeding, *Kroger*, 437 U.S. at 371.

*Federal Practice and Procedure* § 1446.

As set forth *supra*, in Connecticut, in order to assert a common law claim for indemnification, a defendant must show that: "(1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent." *Smith v. New Haven*, 258 Conn. at 66.

In the case at bar, Triangle Tube has set forth a plausible claim for indemnification.[7] In particular, it has alleged that (1) Hoffman was negligent in the installation of the water heater tank; (2) Hoffman's negligence in installing the water heater, rather than any action by Triangle Tube, was the direct, immediate cause of the tank's failure and resulting damages; (3) Hoffman had "exclusive control over the sale and proper installation of the water heater" (to the exclusion of Triangle Tube); and (4) Triangle Tube "did not have reason to know of any negligence by Hoffman," had "no reason to anticipate [such] negligence," and "reasonably relied on Hoffman not to be negligent." Doc. 13, at 9 (¶¶ 13-16). In sum, Triangle Tube has alleged each of the four requisite elements to assert a common law indemnification claim in Connecticut.

---

[7] The United States Supreme Court has clarified that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Court's next consideration is whether Triangle Tube's indemnification claim is barred by Connecticut's product liability act ("CPLA"). In *Kyrtatas v. Stop and Shop, Inc.,* 205 Conn. 694 (1988), the Connecticut Supreme Court held that the CPLA had abrogated common-law indemnification in the context of claims between codefendant product sellers. The Court held that the principles of comparative negligence set forth in Conn. Gen. Stat. § 52–572o could not be reconciled with common-law indemnification under the circumstances of that case. 205 Conn. at 701. The Court, however, confined its holding to the "situation in which all potential defendants are parties to the suit." *Id.* at 703 n.2 (distinguishing situations in which "a plaintiff may not sue all potential defendants" and "[a] defendant may implead a third party who may be liable for all or part of the plaintiff's claim against him").

Thereafter, in *Malerba v. Cessna Aircraft, Co.*, 210 Conn. 189 (1989), the Connecticut Supreme Court held that the CPLA does not abrogate common-law indemnity claims in actions where a product seller impleads "a third party who is or may be liable for all or part of the claimant's claim" pursuant to Conn. Gen. Stat. 52-577a(b). In *Malerba*, the plaintiff, who sustained personal injuries in an airplane accident, sued Cessna Aircraft Company ("Cessna") for damages under the CPLA. Cessna subsequently filed a motion for leave to serve a third party complaint, seeking common law indemnification against the aircraft's owner, Edward A. Schuler, and mechanic, Peter Lindblom. Specifically, Cessna alleged that the accident was the result of their negligence. Both Malerba and Schuler moved to strike the third party complaint in its entirety, claiming that "it seeks contribution . . . not recognized under Connecticut law." The trial court granted both motions to strike, stating that common law principles of indemnification have been abrogated by the CPLA. Upon entry of judgment in favor of Schuler, Cessa appealed and the Supreme Court reversed,

holding that "common law indemnification continues as a viable cause of action in the context of product liability claims." 210 Conn. at 198. *See also Foster v. Foster*, No. X10UWYCV136028741, 2016 WL 3391518, at *2 (Conn. Super. Ct. May 26, 2016) (noting that in *Malerba*, "[t]he Supreme Court held that a product seller who is a defendant in an action brought under the CPLA could bring common-law indemnification claims against non-product sellers pursuant to Conn. Gen. Stat. § 52–577a(b)").

In the case at bar, Triangle Tube seeks indemnification from Hoffman for negligence under Conn. Gen. Stat. § 52-577a(b).[8] Doc. 13, at 7. The indemnification action is an impleader claim and is not abrogated by the CPLA. It may thus proceed under Connecticut law.

### III. CONCLUSION

For the foregoing reasons, Defendant Triangle Tube's "Motion for Leave to Join Third Party Defendant, Hoffman Fuel Company of Danbury" [Doc. 13] is GRANTED. Pursuant to 28 U.S.C. § 1367(a), the Court may exercise supplemental jurisdiction over Triangle Tube's third party indemnification claim because it is "so related to [the main] claim[ ] in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the

---

[8] Conn. Gen. Stat. § 52-577a(b) states:

> (b) In any such [product liability] action, a product seller may implead any third party who is or may be liable for all or part of the claimant's claim, if such third party defendant is served with the third party complaint within one year from the date the cause of action brought under subsection (a) of this section is returned to court.

The Court notes that this action commenced on April 27, 2016. Therefore, Triangle Tube has requested to serve Hoffman within one year following the date the cause of action was brought.

United States Constitution." 28 U.S.C.A. § 1367(a). Moreover, none of the exceptions enumerated in § 1367(c) apply and/or militate against the exercise of supplemental jurisdiction in this case.

Pursuant to Rule 14(a), Fed. R. Civ. P., Triangle Tube's indemnification action against Hoffman is derivative of, and factually entwined with, the Plaintiffs' product liability claim against Triangle Tube. The indemnification claim is precisely the kind of action contemplated by Rule 14(a), Fed. R. Civ. P., in that Triangle Tube seeks to implead a third party "for all or part of the [plaintiffs'] claim against it."

In addition, as set forth, *supra*, the Court has examined the allegations of Triangle Tube's common law indemnification claim and found that each necessary element under Connecticut law has been alleged. Whether the facts will ultimately support the allegations is not for today's discussion. Triangle Tube will be left to its proof. For now, the Court grants leave to proceed with the proposed third party complaint.

In accordance with both the Federal and Local Civil Rules, Triangle Tube must serve its proposed "Third Party Complaint" upon Hoffman Fuel Company of Danbury, as well as e-file that pleading, on or before **December 2, 2016.** Thereafter, the Clerk shall add Hoffman to the case docket as "Third Party Defendant;" and the third party action will be included in the case caption following the original claim of Plaintiffs Homesite and Lofrumento against Defendant Triangle Tube.

Finally, the Court notes that in the parties' "Form 26(f) Report of Parties' Planning Meeting," Homesite, Lofrumento, and Triangle Tube requested an early settlement conference, preferably "with a United States Magistrate Judge." Doc. 11, at 4 (Pt. C.1.-.3). On or before **December 23, 2016,** after Hoffman has been served with the Third Party Complaint, all parties are directed to

confer to: (1) agree upon proposed revised case deadlines and (2) decide whether they jointly seek, or renew their request for, an early settlement conference. With respect to revised deadlines, the parties must file an amended "Rule 26(f) Report of Parties' Planning Meeting" on or before **January 6, 2017.** If they request an early settlement conference, the parties must, if so advised, file a joint motion stating that request. The matter may then be referred to a Magistrate Judge to conduct the settlement conference.

It is SO ORDERED.

Dated:  New Haven, Connecticut
            November 23, 2016

                                                                            */s/Charles S. Haight, Jr.*
                                                                            CHARLES S. HAIGHT, JR.
                                                                            Senior United States District Judge